# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### THIRD DIVISION

Christopher Loyd Ivey,                                             Civil No. 05-1215 JMR/AJB

                                    Plaintiff,

v.                                                        **<u>REPORT AND RECOMMENDATION</u>**

Dean Mooney, Paula Johnson,
and Diane Haller,

                                    Defendants.


        This matter is before the Court, Magistrate Arthur J. Boylan, on defendants' motion to

dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6).  Plaintiff was civilly committed as a patient

of the Minnesota Sex Offender Program in Moose Lake, Minnesota.[1]  The individual defendants are

employees of the program and are each sued in their official and individual capacities.[2]   The complaint

is brought pursuant to 42 U.S.C. § 1983 and asserts actions under the United States Constitution, as

well as supplemental claims under the Minnesota state constitution, statutes, administrative rules and

common law.  The claims relate to plaintiff's ability to maintain access and privacy with respect to

personal legal materials, including paper documents and electronically stored information.  For his

remedies in this matter plaintiff seeks declaratory and injunctive relief, joint and several nominal

---

        [1]  Plaintiff has since been transferred to the Minnesota Sex Offender Program in St. Peter,
Minnesota. Notice of Change of Address [Docket No. 13] and Affidavit of Ivey [Docket No. 15].

        [2]  Defendant Dean Mooney is the Director of the Minnesota Sex Offender Program in Moose
Lake; defendant Paula Johnson is a Group Supervisor Assistant in charge of security for the Minnesota
Sex Offender Program in Moose Lake; and defendant Diane Haller is an Office and Administrative
Specialist with the Moose Lake program.

compensatory damages in the amount of one dollar, and joint and several punitive damages in the

amount of $10,000, to be donated to charity for the benefit of sex abuse victims.

Defendants now move to dismiss based upon contentions that official capacity claims

seeking money damages are barred under the Eleventh Amendment; the federal court is prohibited from

considering the state law claims under the circumstances in this case; plaintiff has not stated a Fourth

Amendment unreasonable seizure claim; plaintiff fails to state cognizable claims under the First and Sixth

Amendments; plaintiff has no viable claim for violation of procedural or substantive due process rights;

and in any event, defendants are entitled to qualified immunity from claims against them in an individual

capacity.  Plaintiff Christopher Ivey is proceeding *pro se*. Barbara Berg Windels, Esq., Office of the

Minnesota Attorney General, represents the defendants.  The action has been referred to the United

States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule

72.1.  For reasons discussed below the court concludes that the plaintiff's official capacity claims for

money damages are barred by the Eleventh Amendment; that claims are barred by qualified immunity to

the extent plaintiff seeks money damages from defendants for actions taken in their individual capacities;

and plaintiff's claims for declaratory and injunctive relief should be denied on the merits.[3]  In addition, it

is recommended that the federal court decline to exercise supplemental jurisdiction over state law

claims.  Defendants' motion should be granted, and the complaint in this matter should be dismissed

with prejudice with respect to federal claims and dismissed without prejudice with respect to state law

---

[3] It is also arguable that plaintiff's claims for injunctive relief are moot as a consequence of his subsequent transfer from Moose Lake to the MSOP facility in St. Peter, Minnesota.  Defendants do not make this argument, however, and the court's recommendation for dismissal is therefore based upon the merits of the respective constitutional causes of action.

claims.

**Background and Claims**[4]

Plaintiff Christopher Ivey is involuntarily confined to the Minnesota Sex Offender Program (MSOP) in Moose Lake pursuant to civil commitment as a sexual psychopathic personality and a sexually dangerous person. In addition to commitment proceedings, Mr. Ivey has engaged himself in various pro se actions. As a result of these legal activities plaintiff has accumulated numerous legal documents and records, many of which are electronically stored on a personal computer hard drive and on recordable CDs. MSOP patients are permitted to have computers at Moose Lake facility, but the computers are modified to prevent Internet access and communications. Prior to January 2005, plaintiff was permitted to scan materials onto his hard drive, and he also had the capacity to record materials on CDs without the assistance of MSOP personnel. In late 2004, a program was implemented at Moose Lake whereby each living unit was given one of four treatment level designations, with each designation entailing a different set of rules and privileges for the patients depending upon the particular score given the individual on a Sex Offender Treatment Needs and Progress Scale. In January 2005, plaintiff Ivey was placed in an Initial Treatment Unit, resulting in modifications to his computer related privileges. Plaintiff was thereafter required to remove the CD burner from his computer and he was no longer permitted access to a scanner. These restrictions were based upon program changes and were not imposed for behavior reasons. Plaintiff responded to the

---

[4] Background facts are taken from plaintiff's Civil Rights Complaint Under 42 U.S.C. 1983, Section VI [Docket No. 1]. Defendants do not rely upon any fact materials outside the pleadings as support for their motion to dismiss.

restrictions by refusing treatment.

Upon losing his capacity to copy and store documents, plaintiff was required to obtain those services from MSOP personnel at a cost of 15 cents per page for paper copies and $3.00 for transferring legal material onto CDs.  Paper documents were given to defendant Diane Haller for copying while electronic copying was performed by computer personnel.  Plaintiff contends that MSOP employees have routinely examined and read his personal legal materials while they were in their possession for copying, and that Ms. Haller has made a record of legal documents brought to her to be notarized.

On April 7, 2004, plaintiff received a 3-page fax from his civil commitment attorney. Two of the pages contained lists of forensic psychologists prepared by the Minnesota Attorney General's Office, while the third page contained highly personal information on several individuals, including the assistant attorney general representing the state in the civil commitment proceeding, examiners who testified at plaintiff's commitment hearing, and other examiners.  On April 28, 2005, plaintiff submitted these materials to unit staff for copying.  Documents and/or copies were returned to him on May 17, 2005, except that neither the original nor copies of the page containing names, along with accompanying personal information, was returned to the plaintiff.  In addition, certain information, likely a psychologist's home phone number, was blacked out on copies of another of the pages, and the original of that page was not returned.  Plaintiff contends that these pages were legal documents that he was intending to use with respect to an ineffective assistance of counsel claim in a pending motion for new hearing on his civil commitment.  Mr. Ivey subsequently submitted a grievance to the Director, defendant Mooney, regarding the missing and altered pages, and was advised that the materials

4

contained sensitive information and had been destroyed.  Plaintiff's request to be allowed to personally

scan and electronically copy materials was also denied pursuant to program policy.

Plaintiff has sued the defendants in both their individual and official capacities, and for

his causes of action in this matter he alleges that defendants, acting under color of state law, have

deprived him of rights under the United States Constitution by unreasonably seizing his property in

violation of his due process rights under the Fourth and Fourteenth Amendments; by denying him his

right to access to the courts under the Sixth Amendment; and by violating his First Amendment right to

the exercise of free communication.  Plaintiff also alleges state causes of action under the Constitution of

the State of Minnesota, Article I, §§ 2, 3, 5, 7, and 10; the Minnesota Patients Bill of Rights, Minn.

Stat. § 144.651; the Rights of Patients under the Mental Commitment Act, Minn. Stat. § 253B.03; and

Minnesota Rules 9515.3040, 9515.3070 and 9515.3080; along with a common law action for patient

neglect and breach of duty to exercise a reasonable standard of professional care.  Defendants have

asserted immunity under the Eleventh Amendment and qualified immunity, and they further contend that

plaintiff has failed to state a claim with respect to each of the alleged constitutional violations, and that

the court should decline to exercise supplemental jurisdiction over state law claims.

## Standard of Review

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction the

defendant must successfully challenge the complaint either on its face or through an attack on

truthfulness of the factual allegations.  Ringsred v. City of Duluth, 187 F.Supp.2d 1141, 1153 (D. Minn.

2001).  In a facial challenge to subject matter jurisdiction the fact allegations are accepted as true and

court merely asks whether jurisdiction exists under the circumstances.  Id. (citing Deuser v. Vecera,

139 F.3d 1190, 1191 (8th Cir. 1998) and <u>Berkovitz v. United States</u>, 486 U.S. 531, 540, 108 S.Ct.

1954 (1988)).  In a challenge to jurisdiction under Rule 12(b)(1) the court may consider matters

outside the pleadings.  <u>Id.</u> (citing <u>Deuser v. Vecera</u>, 139 F.3d at 1191 n.3).

Federal Rule of Civil Procedure 12(b)(6) provides that a pleader may assert a defense

of failure to state a claim upon which relief can be granted by motion.  On a motion to dismiss pursuant

to Fed. R. Civ. P. 12(b)(6) the court should liberally construe a pro se complaint and should not

dismiss claims "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

[the] claim which would entitle [the plaintiff] to relief." <u>Holloway v. Lockhart</u>, 792 F.2d 760, 761-62

(8th Cir. 1986)(citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02 (1957).  The

reviewing court must take all well pleaded allegations as true and in the light most favorable to plaintiff.

<u>St. Croix Waterway Ass'n. v. Meyer</u>, 178 F.3d 515, 519 (8th Cir. 1999).  In addition, the court must

accord reasonable inferences in favor of the non-moving party.  <u>Holloway</u> at 761-62 (citing <u>Conley</u>, 78

S.Ct. at 101-02).  However, the court is not required to accept the legal conclusions drawn by the

pleader from those facts, <u>Thompson v. Olsten Kimberly Qualitycare, Inc.</u>, 980 F.Supp. 1035, 1037

(D. Minn. 1997), and a plaintiff cannot rely upon general and conclusory allegations to survive a Rule

12(b)(6) motion.  <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985).  Pro se pleadings are held

to a less stringent standard than attorney drafted pleadings, <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21,

92S.Ct. 594, 596 (1972).  Nonetheless, the plaintiff still must present evidence to defeat a properly

supported motion and may not rely upon conclusory allegations and unsupported assertions.  <u>Dunavant</u>

<u>v. Moore</u>, 907 F.2d 77, 80 (8th Cir. 1990).

**<u>Eleventh Amendment Immunity</u>**

In an action under 42 U.S.C. § 1983 a public servant may be sued in an official capacity, an individual capacity or both.  Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).  A suit against a public employee in that person's official capacity is merely a suit against the public employer.  Id. (citing Kentucky v. Graham 473 U.S. 159, 165, 105 S.Ct. 3099, 3105-06 (1985)).  The Eleventh Amendment protects the State and arms of the State from liability for damages in a § 1983 action.  This same immunity extends to state officials who are named as defendants in a § 1983 action where the suit is brought against an individual acting in an official capacity.  In such a case the action is not against the person but is against the office and is no different from a suit against the State itself.  See  Hafer v. Melo, 502 U.S. 21, 25-26, 112 S.Ct. 358, 361-62 (1991); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989).  The Court finds no basis upon which to conclude that the State has waived its Eleventh Amendment immunity from suit under the circumstances presented in this case.  Claims against the State of Minnesota and all individually named defendants are barred by the Eleventh Amendment to the extent plaintiff seeks monetary damages for actions taken in an official capacity.

**Qualified Immunity**

The individual defendants in this action have moved for summary judgment on qualified immunity grounds.  The doctrine of qualified immunity protects a defendant from liability for alleged misconduct which he reasonably believed to be lawful or which was not clearly established as unlawful at the time the conduct occurred.  The Supreme Court has long held that a state officer sued in his or her individual capacity "may assert personal immunity defenses, such as objectively reasonable reliance on existing law."  Hafer v. Melo 502 U.S. 21, 25; 112 S.Ct. 358, 362 (1991).  Thus,  government

officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," are shielded from liability for civil damages.  Hartley v. Fine, 780 F.2d 1383, 1387 (8th Cir. 1985)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Wiegand v. Spadt, 317 F.Supp.2d 1129, 1137 (D.Neb. 2004)(quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct 534, 537 (1991)). Qualified immunity is immunity from suit rather than a mere defense and should be decided by the court long before trial, though the plaintiff is given the benefit of all relevant inferences on motion to dismiss, and a party is not entitled to dismissal on qualified immunity grounds where genuine dispute exists concerning predicate facts material to the issue.  Wiegand v. Spadt, 317 F.Supp.2d at 1137 (citing Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000)).  "Predicate facts" consist of only the relevant circumstances and the acts of the parties themselves, and do not include the conclusions of others with regard to the reasonableness of those actions.  Wiegand at 1137 n.3 (citing Pace 201 F.3d at 1056).

Defendants in this matter assert that as a matter of law there has been no violation of plaintiff's federal constitutional rights with respect to alteration or seizure of plaintiff's documents. Consequently, qualified immunity bars any claim for money damages from the individual defendants. Upon review of the record before the Court, and viewing all the evidence in the light most favorable to the plaintiff, the Court concludes as a matter of law that plaintiff cannot show that the conduct of any defendant violated clearly established statutory or constitutional rights of which a reasonable person

would have known.[5]

   **Fourth Amendment.**  The Fourth Amendment prohibits only unreasonable searches, and circumstances will dictate whether or not particular searches are reasonable.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 558, 99 S.Ct. 1861, 1884 (1979).  Though prisoners and others who are detained retain some Fourth Amendment rights, searches and seizures are unconstitutional only to the extent they are unreasonable.  <u>Id.</u>  An involuntarily committed patient at a state institution is not a prisoner per se, but the same safety and security concerns arise out of the detention.  <u>Revels v. Vinenz</u>, 382 F.3d 870, 874 (8th Cir. 2004)(referencing <u>Andrews v. Neer</u>, 253 F.3d 1052, 1061 (8th Cir. 2001)(excessive force claim by involuntarily committed patient evaluated under the same standard as a claim brought by a pretrial detainee)).  When balancing the need for the particular search (and resulting seizure) against the invasion of personal rights that is entailed in such actions, the court will consider the justification for the intrusion, the manner in which it is conducted, reason the action was taken, and the place at which the seizure occurred.  <u>Bell v. Wolfish</u>, 441 U.S. at 559, 99 S.Ct. at 1884.  In light of the significant and legitimate security interests of the secured facility, seizures may take place on less than probable cause, despite the substantial degree to which such actions may invade personal privacy.  <u>Id.</u>, 441 U.S. at 559-60, 99 S.Ct. at 1885.  A seizure of property occurs when there is a meaningful interference with a person's possessory interest in the property.  <u>Johnson v. Outboard Marine Corp.</u>, 172 F.3d 531, 536 (8th Cir. 1999).

   With respect to the alleged seizure of documents in this instance the court notes that the

---

  [5]  Under the circumstances presented in this motion this conclusion also justifies dismissal of constitutional claims on the merits.

characterization of this matter as a seizure is somewhat disingenuous. The materials were not obtained as the result of a search; the plaintiff himself placed the pages in the custody of program employees for copying; and the documents contained sensitive and personal information regarding persons involved in his civil commitment proceedings that should not have been provided to the plaintiff in the first place. Nonetheless, upon allowing the plaintiff an exceptionally generous view of the meaning of seizure under the Fourth Amendment, the court presumes that meaningful interference with a interest in property is alleged. However, in balancing the need for the seizure against the invasion of plaintiff's rights, the absence of any Fourth Amendment violation is readily apparent. There was no search and therefore no intrusion whatsoever upon Mr. Ivey's personal rights. Also, the patient delivered the documents for copying purposes and therefore can claim no privacy interest. The court gives no credence to any contention that the plaintiff's inability to make his own copies, pursuant to program policy, necessitated the disclosure because the court finds no plausible litigation reason for needing copies of information he was not entitled to possess in the first instance. Finally, the seizure was not merely justified, but was necessary, in light of the nature of the information contained in the materials. Plaintiff's cause of action for violation of his Fourth Amendment rights is frivolous and fails to state a claim. Defendants are entitled to qualified immunity with respect to the claim, and the cause should be dismissed on the merits to the extent that plaintiff seeks declaratory or injunctive relief[6] on Fourth Amendment grounds.

       **First Amendment.** Plaintiff has asserted a cause of action for violation of the First

---

[6] Plaintiff's requested injunctive relief is for an order requiring defendants to again allow him the use of a CD burner and scanner; to stop keeping records of patient case filings; and to cease reading, confiscating and destroying legal documents without due process.

Amendment's guarantee of the exercise of free communication based upon defendants' manipulation and alteration of original documents owned by the plaintiff. The First Amendment protects the right to receive information and ideas. <u>Renne v. Geary</u>, 501 U.S. 312, 331, 111 S.Ct. 2331 (1991). The First Amendment does not protect the right to receive and possess written material that is essentially contraband. Plaintiff provides no facts or explanation which support a claim that plaintiff's right to free speech has been abridged or violated as consequence of taking or altering documents in this instance. The mere fact that this discussion relates to the possession of written material does not create a First Amendment issue, particularly where there is no perceivable allegation that the materials contains plaintiff's thoughts and ideas or that his right to expression has been limited. Moreover, to the extent that program policy and/or institutional restrictions have affected plaintiff's ability to disseminate the documents or information contained in them, such policy is clearly and reasonably related to legitimate and obvious security interests. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 550-51, 558, 99 S.Ct. 1861, 1880.[7] Qualified immunity bars claims with respect to First Amendment violations in this case, and the claim should be dismissed on the merits to the extent that plaintiff seeks declaratory or injunctive relief on First Amendment grounds.

  **Sixth Amendment.** Plaintiff alleges that his Sixth Amendment right of access to the courts for purposes of challenging his civil commitment has been violated as a result of defendants' actions. The Sixth Amendment expressly applies to criminal actions. Mr. Ivey's civil commitment

---

  [7] In <u>Bell v. Wolfish</u>, 441 U.S. at 550-51, 558, 99 S.Ct. at1880, the Supreme Court discusses institutional security in the context of the rights of prisoners to receive books in which contraband could be smuggled. In the present case it is the actual written material, i.e. home addresses, home telephone numbers, birth dates, and drivers license numbers, that is accurately construed to be contraband.

proceedings, as well as any actions commenced by him as a challenge to his civil commitment, are not

criminal proceedings and do not implicate the Sixth Amendment as a matter of law.  Furthermore,

plaintiff cannot show that defendants have interfered with his ability to pursue his legal claims, i.e. actual

injury, as necessary to establish a violation of the right of access to the courts under the First, Sixth, and

Fourteenth Amendments.  Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180 (1996).

Indeed, to extent that the document may constitute evidence in a legal action, it is the existence and

nature of the documents, rather than the particular information contained in the documents, that is

pertinent.  Plaintiff states in his complaint at ¶6.43 that he can produce witnesses to attest to both the

existence of the document and the information contained within it, and defendants do not dispute the

existence and nature of the papers.  There simply has been no constitutionally significant interference

with plaintiff's ability to pursue a legal action, and there has been no violation of his right of access to

the courts.  Defendants are entitled to qualified immunity protection on this cause of action, and the

claim should be dismissed on the merits to the extent that plaintiff seeks declaratory or injunctive relief

based upon an access to the courts claim.

   **Fourteenth Amendment Due Process.**  The nature of plaintiff's Fourteenth

Amendment claim is sufficiently vague and unexplained so as to warrant dismissal based upon qualified

immunity for that reason alone.  In addition, no particular liberty interests or property rights are

identified as being at issue; plaintiff offers no suggestions as what procedural processes were due but

denied; and he makes no factual allegations of conduct of a nature that might establish a substantive due

process claim.[8]  There is simply no just cause to hold individual defendants personally liable for

knowingly violating constitutional rights which the plaintiff himself fails to identify or articulate as the

basis of a claim.  The court concludes that as a matter of law plaintiff has no cause of action for

violation of his rights to procedural or substantive due process under the Fourteenth Amendment.

Dismissal on the merits is appropriate to the extent that plaintiff seeks declaratory or injunctive relief on

Fourteenth Amendment due process grounds.

**State Law Claims**

Plaintiff has alleged several causes of action alleging violation of Minnesota state laws as

previously cited.  Pursuant to 28 U.S.C. § 1367(c)(3), a court may decline to exercise supplemental

jurisdiction over a claim if the "court has dismissed all claims over which it has original jurisdiction ...."

Indeed, though the district court has discretion in determining whether to exercise jurisdiction over

pendant state law claims, the federal court should "exercise judicial restraint and avoid state law issues

wherever possible." Minnesota Association of Nurse Anesthetists v. Unity Hospital, 5 F.Supp.2d 694,

711 (D. Minn. 1998)(quoting  Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir. 1990).

"[W]hen state and federal claims are joined and all federal claims are dismissed on a motion for

summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless

---

[8]  The principle of substantive due process is based upon the rationale that "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs–*e.g.*, food, clothing, shelter, medical care, and reasonable safety–it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause." DeShaney v. Winnebago, 489 U.S. 189, 200, 109 S.Ct. 998, 1005 (1989)(citing Youngberg v. Romeo, 457 U.S. 307, 315-16, 102 S.Ct. 2452, 2457-58(1982)(relating to substantive due process for involuntarily committed persons)).  The complaint in this matter does not state a cognizable substantive due process claim.

decisions of state law . . . as a matter of comity." <u>American Civil Liberties Union v. City of Florissant</u>, 186 F.3d 1095, 1098-99 (8th Cir. 1999). In this instance the federal claims under section 1983 have been dismissed and state law claims remain. Under these circumstances the court should decline to exercise supplemental jurisdiction over causes of action based upon state law and such claims should be dismissed without prejudice.

Based upon the foregoing discussion, the Magistrate Judge makes the following:

## RECOMMENDATION

It is **hereby recommended** that defendants' Motion to Dismiss be **granted** [Docket No. 7] and that the complaint pursuant to 42 U.S.C. § 1983 be **dismissed with prejudice** with respect to federal claims and **dismissed without prejudice** with respect to Minnesota state law claims [Docket No. 1]. It is **further recommended** that plaintiff's motion for preliminary injunction be **denied as moot** [Docket No. 3].

Dated:    February 21, 2006

 s/ Arthur J. Boylan
ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before March 7, 2006.

14